[No. D032530. Fourth Dist., Div. One. June 6, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
MERLE G. WAKEFIELD, Defendant and Appellant.

894

## COUNSEL

David R. Hendricks, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle M. Boustany and Bradley A. Weinreb, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## KREMER, P. J.—

Merle G. Wakefield appeals a civil commitment under the Sexually Violent Predators Act (Welf. & Ins. Code,[1] § 6600 et seq.) pursuant to petitions filed in March 1997 and October 1997. He contends the court lacked jurisdiction to order a commitment, because he was not in lawful custody at the time the petitions were filed. He also contends the commitment is invalid because the SVP Act's requirement for a current diagnosis of a mental disorder was not met. We affirm.

### FACTS

In 1981 Wakefield pleaded guilty to committing a lewd act with a child (Pen. Code, § 288a) and served a prison term. In 1990 Wakefield pleaded guilty to rape (Pen. Code, § 261) and was sentenced to prison. He was paroled on December 20, 1993, and after having his parole twice revoked, he was again paroled in July 1995.

While on parole, Wakefield was twice arrested in November 1995; one arrest was for domestic violence, the other for vandalism, false identification to a police officer and resisting arrest. In both instances, Wakefield gave a false name when arrested. The first arrest resulted in a criminal prosecution, with Wakefield eventually pleading guilty to battery. Wakefield's attorney

[1]All statutory references are to the Welfare and Institutions Code unless otherwise specified.

on the domestic violence charge stated he had telephoned Wakefield's parole agent in November 1995 but was unable to speak to the agent; counsel was aware that Wakefield was under a parole hold but did not inform the parole officer of the domestic violence arrest.

In December 1995 Wakefield's parole was revoked for the November 1995 arrest for vandalism, false identification to a police officer and resisting arrest. Wakefield waived a revocation hearing in exchange for a nine-month revocation term.

On October 4, 1996, a revocation hearing was held based upon Wakefield's possession of letters from his stepdaughters and suggestive photographs of his wife in violation of the special terms of his parole as well as based upon his November 1995 domestic violence arrest/battery conviction. A true finding was made on all charges and a nine-month revocation term was imposed. Wakefield appealed the decision.

On February 5, 1997, the Board of Prison Terms (Board) rescinded the nine-month revocation imposed in October 1996, imposed a three-month term as a modification of the December 1995 revocation and imposed 150 days for in-custody misconduct for Wakefield's possession of the letters (30 days for each of the five letters).

On March 13, 1997, the San Diego County District Attorney filed a sexually violent predator (SVP) petition.

On April 1, 1997, Wakefield filed a petition for a writ of habeas corpus in the Marin County Superior Court, challenging the Board's February 1997 imposition of a three-month term for the November 1995 domestic violence incident. On May 16, 1997, the Marin County Superior Court ordered the Department of Corrections to vacate the three-month term because a formal hearing should have been held before imposition of the term. The court did not order Wakefield released from custody in the event the Department of Corrections decided to proceed with a new revocation hearing.

On July 8, 1997, the Board revoked Wakefield's "parole" for psychiatric treatment as a potentially dangerous SVP.

On October 2, 1997, the San Diego County District Attorney filed a second SVP petition that was identical to the March 1997 petition, the only difference being Wakefield's place of incarceration.

## DISCUSSION

### I

### *"Lawful" versus "Actual" Custody*

██ Wakefield contends that a commitment under the SVP Act requires that an individual be lawfully in custody at the time the petition was filed. He contends he was not lawfully in custody when either petition was filed because: (1) the Marin County Superior Court vacated the three-month revocation term he was serving at the time the March 1997 SVP petition was filed; and (2) the court in *Terhune v. Superior Court* (1998) 65 Cal.App.4th 864 [76 Cal.Rptr.2d 841] held that revocations for psychiatric treatments such as his revocation in July 1997 were improper—the Board must instead refer inmates for civil commitment under the SVP Act. Wakefield also asserts his custody status on the dates the petitions were filed were not a result of a good faith mistake of law or fact.

The SVP Act provides that if the Director of Corrections determines that "an individual who is in custody under the jurisdiction of the Department of Corrections . . . may be a sexually violent predator," the Department "may refer the person for evaluation in accordance" with the SVP Act. (§ 6601, subd. (a)(1).) The individual is then evaluated by two practicing psychiatrists and/or psychologists. If it is determined the person is an SVP within the meaning of the SVP Act, then the state Department of Mental Health makes a request to the district attorney where the individual was convicted for the filing of a petition for an SVP commitment. (§ 6601, subds. (d), (h) & (i).) If the district attorney concurs with the state Department of Mental Health's recommendation, then a petition is filed in superior court. (§ 6601, subd. (i).)

Recently, the Legislature added the following provision to the SVP Act: "A petition may be filed under this section if the individual was in custody pursuant to his or her determinate prison term, parole revocation term, or a hold placed pursuant to Section 6601.3, at the time the petition is filed. *A petition shall not be dismissed on the basis of a later judicial or administrative determination that the individual's custody was unlawful, if the unlawful custody was the result of a good faith mistake of fact or law.* This paragraph shall apply to any petition filed on or after January 1, 1996." (§ 6601, subd. (a)(2), italics added.)

In enacting this provision, the Legislature explained: "The Legislature finds and declares that paragraph (2) of subdivision (a) of Section 6601 is declaratory of existing law. The Sexually Violent Predator Act authorizes

civil commitment of persons who pose a danger as a result of a mental disorder if released from custody. Therefore, where a petition for commitment of a sexually violent predator has been filed, it is not the intent of the Legislature that a person be released based upon a subsequent judicial or administrative finding that all or part of a determinate prison sentence, parole revocation term, or a hold placed pursuant to Section 6601.3 [retaining a person in custody for mental evaluation], was unlawful." (Stats. 1999, ch. 136, § 3.)

Thus, the Legislature has made it absolutely clear that, contrary to Wakefield's assertion, lawful custody has never been a jurisdictional prerequisite to filing an SVP petition; a later judicial or administrative proceeding determination the custody was unlawful does not deprive the court of the power to proceed on an SVP petition if the custody status when the petition was filed was a result of a good faith mistake of law or fact.

Here, Wakefield was in actual custody when both petitions were filed. A subsequent judicial determination in Marin County found Wakefield's custody in March 1997 was unlawful. There has been no judicial or administrative finding that Wakefield's custody was unlawful at the time the October 1997 petition was filed. The trial court concluded Wakefield was in good faith custodial status when the petitions were filed. Wakefield does not dispute that the district attorney had a good faith belief his custody status was lawful when the petitions were filed. Substantial evidence in the record supports the good faith determination.

As to Wakefield's custody status when the March 1997 petition was filed, we initially note Wakefield did not file his petition for a writ of habeas corpus until after the SVP petition was filed and thus there was no challenge pending to his custodial status when the petition was filed. Second, we note that the Marin County Superior Court, when it granted Wakefield's petition, did not order him released from prison but indicated the Department of Corrections could seek a new revocation hearing for the November 1995 domestic violence incident. Nothing in the record suggests a three-month revocation term would not have been imposed had a new hearing been held; it appears a new hearing was not held because proceedings had already been initiated to revoke Wakefield's parole based on psychiatric grounds.[2] In other words, while Wakefield's custody status in March 1997 may have been determined to be "unlawful" by the Marin County Superior Court, it subsequently could have been rendered lawful by a new revocation hearing. These circumstances support a conclusion that Wakefield's custody status in March 1997 was in part due to a good faith mistake of law.

---

[2]On April 15, 1997, the Board had placed a parole hold on Wakefield pending a psychiatric evaluation to determine whether a psychiatric return was appropriate.

Finally, we note the problems revolving around the revocation for the November 1995 domestic violence incident appear to be due, in part, to Wakefield's false identification to the officer when arrested, his failure to report this arrest to his parole officer, his attorney's failure to adequately inform Wakefield's parole officer of the arrest and conviction, and the fact Wakefield had multiple arrests in November 1995. In other words, a mistake of fact contributed to Wakefield's technically unlawful custody status in March 1997.

As to the October 1997 petition, when Wakefield was in custody for psychiatric treatment, we first note that Wakefield has not previously challenged this revocation by seeking a writ of habeas corpus. A habeas corpus petition is the proper method for challenging one's custody status. (See Pen. Code, § 1473 et seq.) Second, Wakefield's reliance on the decision in *Terhune v. Superior Court, supra,* 65 Cal.App.4th 864 is misplaced. That case, which struck down use of the administrative scheme by the Board to hold SVP's such as Wakefield, was not issued until after Wakefield's psychiatric revocation. Therefore, contrary to Wakefield's assertion, it cannot be said that the Department of Corrections acted in bad faith when it revoked Wakefield's parole on that basis prior to the *Terhune* decision.

In sum, we conclude that both the petitions, filed in March 1997 and October 1997, were properly filed while Wakefield was in good faith custody of the Department of Corrections.

No reversal is merited on this ground.

## II

### *Lack of a Current Diagnosis*

■ Wakefield contends a commitment based on the October 1997 petition was invalid because the psychological evaluations were not current; the most recent evaluations were performed prior to the March 1997 petition, in February 1997. He also complains he was not screened (evaluated) prior to the filing of the October 1997 petition as required by section 6601, subdivision (b).

The SVP Act provides an individual may not be found to be a sexually violent predator "based on prior offenses absent relevant evidence of a *currently diagnosed* mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a), italics added.) The

SVP Act generally contemplates that psychological evaluations are performed prior to the state Department of Mental Health's recommendation to a district attorney for the filing of an SVP petition. (§ 6601, subds. (b) & (h).) Here, the evaluations were conducted prior to the March 1997 petition; no new evaluations were performed immediately prior to the recommendation for the filing of the October 1997 SVP petition.

We first observe that Wakefield did not raise this issue below. Indeed, Wakefield did not raise any challenges to the sufficiency of the evidence to support a finding he was an SVP; he submitted the case based on the transcript of the probable cause hearing transcript and documentary evidence. Second, we note that both of the psychologists who had evaluated Wakefield testified at the probable cause hearing their diagnoses were current, unchanged from their earlier evaluations. Finally, even if we were to conclude that a new screening and evaluations should have been conducted prior to the October 1997 petition, we would not reverse since the evaluations were clearly sufficient for the March 1997 petition, and the civil commitment here was based on both petitions.[3]

No reversal is merited on this ground.

### DISPOSITION

The judgment is affirmed.

Nares, J., and McIntyre, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 27, 2000.

---

[3]We find no merit to Wakefield's suggestion reversal is required because the court failed to specify on which petition it was relying. The petitions were identical except for Wakefield's current place of incarceration and, as discussed in part I, *ante*, whether the March or October petition is considered, Wakefield was in good faith custody of the Department of Corrections when the petitions were filed.